J-A06004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JASMINE SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DUANE CONFER, II | : | |
| | : | |
| Appellant | : | No. 1003 WDA 2022 |

Appeal from the Order Dated August 3, 2022
In the Court of Common Pleas of Mercer County Civil Division at No(s):
No. 2013-1424

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: MAY 3, 2023**

Appellant, Duane Confer, II ("Father"), appeals from the order entered

on August 3, 2022, in the Court of Common Pleas of Mercer County, that

modified an existing custody order.[1]  After careful review, we affirm.

The record reveals that Mother lives in Roanoke, Texas with her

boyfriend, S.A. ("Boyfriend").  N.T., 7/18/2022, at 87-88.  She has resided in

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] H.C., a male born in March 2008, was the focus of the parties' custody
litigation.  Hereinafter, we shall refer to H.C. as "Child."  The trial court's
August 3, 2022 order awarded primary physical custody of Child to Appellee,
Jasmine Smith ("Mother").  Father acquired partial physical custody of Child
under the August 3, 2022 order.  Before entry of the August 3, 2022 order,
an existing custody arraignment provided for shared legal custody, with Father
exercising primary physical custody and Mother exercising partial physical
custody.

Texas since October 2019 when she moved there for work. *Id.* She works full-time as a sales manager. GAL Report, 3/22/2022, at 2.

Father resides in Hermitage, Pennsylvania. N.T., 7/19/2022, at 8. He is medically retired from the Marine Corps. *Id.* at 15. Father's paramour works as a caseworker for Children and Youth Services in Lawrence County. N.T., 7/18/2022, at 205. She does not live with Father and Child but, on occasion, stays overnight. *Id.* at 212.

Mother initiated this matter when she filed a divorce complaint in May 2013. At that time, Mother and Father (collectively, "Parents") resided in Hermitage, Pennsylvania. Thereafter, in August 2013, Mother filed a petition for primary physical custody of Child, then five years old.

Interim orders dated November 5, 2013, and February 13, 2014, awarded Mother primary physical custody, Father partial physical custody, and Parents shared legal custody. Subsequently, Father filed a petition to modify custody in March 2015, and by stipulated order dated August 4, 2016, the trial court awarded Parents shared legal and physical custody, *inter alia*. Specifically, during the school year, the court awarded shared physical custody pursuant to a two-two-three custody arrangement. This arrangement involves a two-week, repeating schedule wherein the child spends two days with one parent, the next two days with the other parent, then three days with the first parent. The schedule switches the following week and repeats thereafter.

During the summer, the stipulated order awarded Father physical custody every week from Monday at 7:30 a.m. until Thursday at 5:00 p.m. Mother then exercised custody from Thursday at 5:00 p.m. until Friday morning at 7:30 a.m. Father then had custody from Friday at 7:30 a.m. until Mother's workday concluded on Friday. Finally, the order awarded Mother custody from Friday after her workday concluded until the following Monday at 7:30 a.m.

On August 15, 2019, Mother filed a petition for modification, averring that she was relocating to Dallas, Texas because of her job and requesting that she be awarded partial physical custody. Specifically, Mother requested custody during Child's school breaks. On August 22, 2019, Father filed a petition for emergency relief requesting primary physical custody of Child. After a custody conference, by order dated October 28, 2019, the court issued an interim order awarding Father primary physical custody, and Mother partial physical custody one weekend a month in Pennsylvania, Thanksgiving break, and half of Christmas break. The order also provided that Mother was to file a notice of relocation within ten days of the date of the order.

Mother filed a notice of relocation and an amended petition to modify on November 12, 2019, wherein she requested primary physical custody of Child. Thereafter, by stipulated order dated March 13, 2020 ("existing custody order"), the trial court awarded Parents shared legal custody, Father primary physical custody, and Mother partial physical custody. Specifically, the court

awarded Mother partial physical custody during Thanksgiving break, half of the winter/Christmas break, spring break, during the summer from July 1 until one week prior to the start of school, and one period per month of up to four days if she is in the Mercer County area.

On January 27, 2022, Mother filed a petition for modification of the existing custody order, wherein she again requested primary physical custody. Hearings occurred on July 18, 19, and 21, 2022. Mother testified in her case-in-chief and presented the testimony of Boyfriend. Father appeared *pro se*. He testified in his case-in-chief, and presented the testimony of his paramour, S.S. Finally, Mother testified on rebuttal, and she presented the testimony of Autumn Johnson, Esquire, the guardian *ad litem* ("GAL").

The court conducted an *in camera* interview of Child in the presence of the GAL. Child was fourteen years old and about to start eighth grade. N.T., 7/18/2022, at 10. Child did not provide the court with a clear preference, but he discussed his life in Pennsylvania and the many connections he has with friends, the school system, and Boy Scouts. *Id.* at 30-31. Child further testified that, while in Mother's custody in Texas, he has attended a football camp, an excursion camp,[2] played laser tag, and lifted weights. *Id.* at 19-20.

Child also stated that, in October 2021, he hurt his finger while playing football, and it required surgery. *Id.* at 13. In addition, Child was on, as best

---

[2] Child testified that the camp involves biking, canoeing, kayaking, swimming, and participating in other sports. N.T., 7/18/2022, at 19.

can be discerned, his school's wrestling team. Child testified that, against his surgeon's instructions to not wrestle for the rest of the season, in February 2022, he and Father decided that his finger had adequately healed for him to wrestle in "a couple of" tournaments. *Id.* at 13-15; Mother's Exhibit 4, Letter from Surgeon. Child also testified that Father tells him about the custody litigation including, but not limited to, the GAL's reports. N.T., 7/18/2022, at 21.

The GAL filed two reports dated March 22, 2022, and July 12, 2022, in which she changed her recommendations, as follows. In the March 22, 2022 report, the GAL recommended that primary physical custody remain with Father.[3] GAL Report, 3/22/2022, at 3. However, after an April 7, 2022 pre-trial conference, the trial court ordered the GAL to obtain Child's medical records for the last five years. Thereafter, the GAL re-interviewed Mother, Child, and Boyfriend on July 10, 2022. GAL Report, 7/12/2022, at 2. The GAL stated that she learned Father allowed Child to wrestle despite not being cleared by his surgeon and, further, Father encouraged Child to lie and say that he was cleared to resume wrestling. *Id.* The GAL also stated that Father allowed Child to read her March 22, 2022 report, as well as court filings by Mother. *Id.* at 3. Finally, the GAL stated that she believes Child will have the same opportunities for sports and academics in Texas as he has in

---

[3] Prior to submitting this report, the GAL reviewed the case docket and spoke with Mother, Father, Child, and Child's former counselor, Stacey Durkin.

Pennsylvania. ***Id.*** at 4. Accordingly, the GAL recommended that the court award Mother primary physical custody. ***Id.***

By order entered August 3, 2022, which was accompanied by an opinion dated August 5, 2022, the trial court awarded Mother primary physical custody, and Father partial physical custody during Thanksgiving break, half of Child's winter break, and during the summer from the end of the school year until July 22 every year. The order also provided Parents shared legal custody. Thereafter, on September 1, 2022, Father, through counsel, timely filed a notice of appeal.[4] The trial court filed a Rule 1925(a) opinion on September 23, 2022.

Father presents the following issues for review:

1. Did the honorable trial court err and abuse its discretion by radically changing primary physical custody to Mother, contrary to the long held custody status quo and well-reasoned preference of [Child], who is by every objective indication from music, academics, friendships, and athletics, excelling and thriving while historically living with Father in Hermitage, Pennsylvania and attending Hickory School District?

---

[4] Father failed to concurrently file a concise statement of errors complained of on appeal with his notice of appeal pursuant to Pa.R.A.P. 1925(a)(i) and (b). ***See In Re K.T.E.L***, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that the failure to file a concise statement of errors complained of on appeal with the notice of appeal will result in a defective notice of appeal, to be disposed of on a case-by-case basis). Approximately three weeks after filing the notice of appeal, on September 22, 2022, Father filed the Rule 1925(b) statement. Since the misstep was not prejudicial to any of the parties and did not impede the trial court's ability to issue a thorough opinion, the procedural error was harmless. ***Cf. J.P. v. S.P.***, 991 A.2d 904 (Pa. Super. 2010) (appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement). We will, therefore, address Father's issues.

2. Did the honorable trial court err and abuse its discretion by radically changing primary physical custody to Mother, contrary to the initial recommendation of the [GAL] made on March 22, 2022 stating that Father should be primary physical custodian?

3. Did the honorable trial court err and abuse its discretion by radically changing primary physical custody to Mother and failing to accurately apply 23 Pa.C.S.[A. §] 5328, the 16 relevant custody factors, to the facts of this case? The court sent the minor child across the country against his preference and contrary to the status quo to live in North Richland Hills, Texas, away from his routines, family, Father, friends, activities and way of life.

Father's Brief at 8-9 (suggested answer omitted).

We review Father's issues according to the following scope and standard

of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009), *quoting* ***Bovard v. Baker***, 775 A.2d 835, 838 (Pa. Super. 2001). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern

of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**R.M.G., Jr., supra** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. **Ketterer v. Seifert**, 902 A.2d 533, 539 (Pa. Super. 2006).

**A.V. v. S.T.**, 87 A.3d 818, 820 (Pa. Super. 2014).

The primary concern in custody cases is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340. The trial court was required to consider the custody factors set forth in the Act, as follows.

**§ 5328. Factors to consider when awarding custody.**

   **(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

      (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

      (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 8 -

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

> (15) The mental and physical condition of a party or member of a party's household.

> (16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

This Court has emphasized that the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." **M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa. Super. 2013), *citing* **A.D. v. M.A.B.**, 989 A.2d 32, 35-36 (Pa. Super. 2010). Further, we have explained that Section 5323(d) of the Act "requires the trial court to set forth its mandatory assessment of the [. . .] factors prior to the deadline by which a litigant must file a notice of appeal." **A.V.**, 87 A.3d at 823 (citations omitted).[5] This Court has stated:

> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v.**

---

[5] We recognize that, because Mother was not again relocating and only Child stood to move to a significantly distant location, the relocation provisions of Section 5337 were not *per se* triggered. **See D.K. v. S.P.K.**, 102 A.3d 467, 468 (Pa. Super. 2014). Nonetheless, this Court has held that trial courts "shall consider the relevant factors set forth in section 5337(h) insofar as they impact the final determination of the best interests" of the child. **Id.** Father does not raise this issue in his statement of questions involved in his brief, and so we do not address it. **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]t is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived."). Moreover, the trial court in this case considered Child's best interests in light of the impact of his relocation, as discussed **infra**. Under these circumstances, we are unable to conclude that the trial court disregarded any obligation imposed under **SPK**, **supra**.

> *M.L.G.,* 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V.*, 87 A.3d at 822-823.

Instantly, the court weighed the following custody factors in Mother's favor: Section 5328(a)(1), (2), (8), (9), and (10). The court weighed factors (4) and (5) in Father's favor. The court also determined that factor (7) was "neutral or very slightly favors [F]ather." Trial Court Opinion, 8/5/2022, at 26-27. The court weighed neutrally between the parties factors (3), (6), (11), (12), and (13) and found inapplicable factors (14), (15), and (16). *Id.* at 23-32.

Although the trial court found that factors (4) and (5) favored Father, it gave determinative weight to factors (1), (2), (8), (9), and (10) based on the undisputed fact that Father allowed Child to wrestle despite instructions from his surgeon that he not yet resume this activity for the remainder of the season. *Id.* at 30. The trial court emphasized that "[allowing Child] to wrestle risked [] causing permanent injury to his dominant hand, overemphasized the importance of sports versus health in a young child's life, and required [Father], and [Child] with Father's permission, to lie . . . to Mother." *Id.* at 30-31. The court also found it "completely inappropriate" for Father to allow Child to read messages between Parents on the Our Family Wizard application, as well as provide him with the GAL's reports. *Id.* at 31. Finally, the trial court stressed that "[t]he primary factor against such a move is the distance

that will remove [Child] from [F]ather and his other family members as well as [Child] switching from a school district he has attended his entire life. However, the [c]ourt believes . . . [Child] will have no difficulty adjusting quickly, excelling academically, and reestablishing himself in the various extracurricular activities he has an interest in." *Id.* at 32.

Father presents three issues for this Court's review, but merely provides one argument section with no subheadings to indicate which issue he is analyzing. Father's Brief at 24-35; *see also* Pa.R.A.P. 2119(a)("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein, followed by such discussion and citation of the authorities as are deemed pertinent."). Additionally, Father baldly cites to various cases with little to no analysis on how the cases apply to the instant matter. *Id.* As such, we consider Father's arguments the best we can discern them.

Father's arguments essentially contend that the trial court misapplied the custody factors. Father's Brief at 9, 22-23. Father states that "no compelling evidence or substantial change in circumstances was presented to justify" a change in custody. *Id.* at 22.

Initially, contrary to Father's contention,

the essential issue in deciding whether to modify custody is **not** whether a petitioner has demonstrated a change of circumstances. *See Karis v. Karis*, 544 A.2d 1328 (1988) ("we hold that a petition for modification of a partial custody to shared

- 12 -

custody order requires the court to inquire into the best interest of the child regardless of whether a 'substantial' change in circumstances has been shown."); *see also Hutchinson v. Hutchinson*, 379 Pa.Super. 247, 549 A.2d 999 (1988) (changed circumstances are no longer required for court to review child custody orders.).

*K.D. v. E.D.*, 267 A.3d 1215, 1224 (Pa. Super. 2021). Accordingly, Mother was not required to prove a substantial change in circumstances to justify a change in custody.

Additionally, Father's argument that the trial court improperly applied the custody factors is without merit. The law is well-settled that the trial court determines which factors are most salient, weighs the evidence, and makes credibility findings. *M.J.M.*, 63 A.3d at 339, *citing A.D.,* 989 A.2d at 35-36; *R.M.G., Jr.*, 986 A.2d at 1237. The trial court found Section 5328(a)(1), (2), (8), (9), and (10) favored Mother and (4) and (5) favored Father. As the court further determined that those factors in favor of Mother outweighed those in favor of Father, the court found this "clearly dictates primary physical custody [be] placed with [Mother]." Trial Court Opinion, 8/5/2022, at 23-32.

Regarding Section 5328(a)(1), which considers the party who is more likely to encourage and permit frequent and continuing contact between the child and another party, the trial court stated that Mother credibly testified that she primarily communicated with Child *via* text. *Id.* at 23. However, "[a]ll parties agreed [Child] was grounded very frequently while at [Father's] house which included removal of the smart phone. At no time was any testimony presented regarding any behavioral difficulties of [Child] in any way

- 13 -

much less substantiating such frequent grounding." *Id.* The trial court also emphasized that Father proposed limiting Mother's summer visitation to two weeks, and that Father told Child that Mother "will make him fat" in Texas and that Child can only succeed with Father. *Id.*

Mother testified that Child is often grounded at Father's house, and it is difficult to communicate with him. N.T., 7/18/2022, at 106-109. Child also confirmed that he is frequently grounded. *Id.* at 37-38. Father similarly testified that, when he grounded Child, he would take Child's "electronics," although he alleged he was mindful of Child's ability to communicate with Mother. N.T., 7/19/2022, at 20-21. Mother stated that, prior to Child coming to Texas for the summer in 2022, Father purchased Child a new phone to ensure he and Child could communicate. N.T., 7/18/2022, at 108. Mother also testified, on cross-examination, that Child said Father "tells [Child] he won't succeed in Texas because he'll get fat, that [Mother] will make him fat, that he won't make friends," and that Child will only succeed with Father. N.T., 7/18/2022, at 145. Thus, the record aptly supports the court's findings with respect to Section 5328(a)(1).

Concerning Section 5328(a)(2), (8), (9), and (10), the trial court emphasized Father's disregard for Child's safety when he allowed Child to wrestle in tournaments despite Child's surgeon instructing against it. Regarding factor (2), the present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm

to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child, the court indicated that the factor favored Mother "particularly regarding physical safeguards." Trial Court Opinion, 8/5/2022, at 24. Father allowed Child to wrestle and told Mother his finger was "all good." *Id.*

Mother specifically testified that Father sent her a message in February 2022 stating that Child's finger was "good to go" and she traveled to watch his wrestling tournament. N.T., 7/18/2022, at 126. Mother stated that she did not know Child was not cleared to wrestle until after the pre-trial conference that occurred in April 2022. *Id.* at 127. Mother stated that Child told her that Father left the decision up to him and that if he wanted to lie, he could. *Id.* at 130.

On cross-examination, Father stated that "I don't know anyone that's followed the doctor's order 100 percent." N.T., 7/19/2022, at 50. Father continued, "I don't know [] better than the doctor, but I know my son's body better than the doctor." *Id.* Ultimately, Father confirmed that he went against the surgeon's instruction:

Q: Where in there does it say [Child] can wrestle this season?

A: It doesn't.

Q: Okay. So you went against the doctor's advice? It's a simple yes or no question.

A: Is it?

Q: Did you go against the doctor's advice?

- 15 -

A: Yeah, I did.

Q: And you did that because you wanted [Child] to compete in sports?

A: That is incorrect.

Q: What medical opinion did you use to verify that he was safe to compete?

A: So we did a lot of research after this finger incident because it was very concerning.

*Id.* at 52-53. He also confirmed that Child was aware that he had not been cleared to wrestle for the remainder of the season. *Id.* at 87. Finally, on cross-examination, Father stated that he did not tell Mother that Child was not cleared to wrestle:

Q: Did you talk to [Mother] at all about saying, hey, you know, I know the doctor says that he's not cleared, but we're going to still allow him to wrestle?

A: Her and I? No.

Q: You, in fact, told her that he was cleared, didn't you?

A: On February 16th, yes.

*Id.* at 96.

In its analysis of Section 5328(a)(8), the attempts of a parent to turn the child against the other parent, the court stated that Father encouraged and assisted Child in lying to Mother regarding his finger. Trial Court Opinion, 8/5/2022, at 27. The court also emphasized that Father allowed Child to read Our Family Wizard posts. *Id.* Regarding Section 5328(a)(9), which party is

- 16 -

more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs, the court stated that allowing Child to wrestle despite his surgeon's recommendation suggests that Father lacks nurturing abilities. Finally, the court concluded that Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child, favors Mother, and incorporated its analysis regarding factors (1), (2), (8), and (9). *Id.* at 28.

As it relates to the foregoing discussion, Child's testimony demonstrated that, contrary to his surgeon's recommendation, in February 2022, he and Father decided that his finger was adequately healed to wrestle, and he participated in a couple of tournaments. During his *in camera* interview, Child testified:

> The Court: So the reports I have is that Dr. Singh told you not to wrestle, but you wrestled anyway?
>
> A: Correct, sir.
>
> The Court: Tell me about that.
>
> A: So it was the end of the year for wrestling, and me and [Father] both agreed that we believed my hand was good enough to wrestle, and I felt that it was in good condition. So it was my decision, and I decided to wrestle in . . . [two] tournaments even though my paper didn't discharge me.
>
> . . .
>
> The Court: When your wrestling coach, or [Mother], or any other school people ask you whether you are allowed to wrestle or not, what did you tell them?

A: Nobody asked me.

The Court: They didn't know about your finger?

A: They knew, but I guess they just assumed that I was cleared. I wasn't questioned.

N.T., 7/18/2022, at 13-15. Child also testified that Father tells him about the custody litigation and the GAL's reports. *Id.* at 21.

Father testified that Child told him about his conversations with the GAL. N.T., 7/19/2022, at 36. He also testified, on cross-examination, that he allowed Child to read the GAL reports and some of Mother's filings:

Q: Okay. So with respect -- let me move on to another topic. So with communication with [Child], . . . you admit that you allowed [Child] to . . . read [the GAL] reports; correct?

A: I did.

Q: And you also agree that you allowed him to read any motions filed by [Mother]?

A: No. Not always. Not everything, no.

. . .

Q: Okay. Do you also admit that you added him to Our Family Wizard?

A: Our Family wizards adds him. He's already on there. I didn't add him. No. So no.

Q: Would you agree that you include him in messages on Our Family Wizard?

A: At times. He's never seen one message that he was included in. I did that, so she would not --

. . .

Q: Let's go back to February 26, 2022. There was a long message written by you that said it was approved by him?

A: What was approved by him?

Q: A message that you sent to [Mother]?

A: I didn't say he's never seen one message. She has said things. So the reason why I let him read these messages is because she lies to him. The only way that I can prove that it's a lie, is sometimes he has to read these things.

Q: So you feel like putting him [in the] middle of you two --

A: I'm not putting him in the middle. If she didn't lie, I wouldn't have to.

*Id.*at 69-70. Accordingly, we discern no abuse of discretion because the record supports the trial court's findings regarding Section 5328(a)(1), (2), (8), (9), and (10).

Father also assails the court for awarding primary physical custody to Mother despite his status as primary physical custodian since August 2019, and despite Child's achievements in music,[6] academics, friendships, and athletics under Father's care. Father's Brief at 21. Father contends that such a radical change severs the relationship between Child and his relatives; destroys continuity in friendships, athletics, and school; creates instability; and was not justified by the evidence presented. *Id.* at 29-31, 34. Father

_____

[6] Child testified that he plays the cello in the school orchestra. N.T., 7/18/2022, at 10.

further argues that the court's decision is "extremely speculative" because the court is assuming Child can recreate his life in Texas. *Id.* at 33.

Father's argument, again, merely questions the trial court's judgment regarding weighing the evidence and determining the most salient factors. Essentially, Father's contention is that the trial court did not give adequate weight to Section 5328(a)(4), the need for stability and continuity in the child's education, family life, and community life, and (5), the availability of extended family.

Importantly, regarding (4), the court stated the following in a memorandum accompanying its decision:

> The [c]ourt finds this factor strongly favors [F]ather. [Child] has lived in the Hermitage, Mercer County, Pennsylvania area his entire life. All of [C]hild's family and relatives, other than [M]other, are located in the Mercer County area. [Child] is very active in [B]oy [S]couts, music lessons, and athletics through the school. [Child] has attended the Hermitage School District the entirety of his life. This [c]ourt finds this factor is mitigated by the fact [that Child] is entering 8th grade, is very outgoing and personable, and while on summer visits with [M]other has participated in camps involving canoeing, biking and the like as well as football camps. Further the other factors which favor [M]other outweigh the instant factor.

Trial Court Opinion, 8/5/2022, at 25-26. Similarly, regarding (5), the court stated "[t]he [c]ourt finds this factor strongly favors [F]ather. Paragraph 4 is incorporated herein." *Id.* at 26. The court also stated that it "believes . . . [Child] will have no difficulty adjusting quickly, excelling academically, and reestablishing himself in the various extracurricular activities he has an interest in." *Id.* at 32.

Regarding Father's argument that the court's decision is speculative, the court merely believed that Child will be able to recreate the life he has in Pennsylvania, in Texas. During the *in camera* interview, Child testified that he is very social and believes he would make friends if he moved to Texas. N.T., 7/18/2022, at 30. Mother similarly testified that Child has participated in camps in Texas and has no issues making friends. *Id.* at 99-100. Mother also testified that Child would attend school at Byron Nelson High School in Texas and used the "Greater Schools" website to ensure the school district is at least equivalent to Hermitage, Pennsylvania. *Id.* at 93-95. Mother also testified that she researched Child's extracurricular activities, and she believes the town in Texas has everything in which he currently participates. *Id.* at 96-97. The court determined that Section 5328(a)(4) favored Father. Nevertheless, based on Child's personality traits as established during *in camera* interviews and the record evidence showing Child's capacity to form new friendships, the court believed Child would have the same opportunities in Texas. We discern no abuse of discretion.

Moreover, in *E.B. v. D.B.*, 209 A.3d 451, 466-67 (Pa. Super. 2019), in the context of examining and declining to disturb a trial court's interim order, this Court stated, in part, ". . .[T]rial courts should be wary of upending the status quo prematurely without substantial justification that the change was warranted by a child's best interest. . . .[T]he ultimate polestar is a child's best interest. . . ." Here, unlike in *E.B.*, we are not dealing with an interim

custody order. Further, and more importantly, as discussed, the record supports the trial court's findings and analysis of the custody factors and determinations as to Child's best interests. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012); *see also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015). Accordingly, we discern no abuse of discretion.

Father also asserts that the change in primary physical custody is contrary to Child's long-held preference. Father's Brief at 34. In addition, Father argues that the GAL "strangely and inexplicably" submitted a supplemental report reversing her initial determination that Father should continue to have primary physical custody. *Id.* at 22. For the reasons that follow, Father's argument is misplaced.

Regarding Section 5328(a)(7), the well-reasoned preference of the child, the trial court found:

> This factor is neutral or very slightly favors [F]ather. [Child] has indicated to [M]other on several prior occasions his preference to relocate to live with her in Texas. [Child] has also stated on numerous occasions his desire to continue to live with [Father] in Mercer County. When [Child] met with the GAL prior to the GAL's April 2022 report, he indicated a desire to remain in Hermitage. However, when [Child] met with the GAL in preparation for the July 2022 report, [Child] indicated he wished the court to make the decision. Meeting with this court [Child] indicated a strong, loving bond, and comfort with [Parents]. [Child] provided no testimony that distinguished one parent or the other. [Child] also indicated he believed both parents lied to him. It appears to the court the primary distinguishing factor in [Child's] mind was his level of comfort with the coaches, teachers, and counselors at his current school, and their comfort with him. The [c]ourt believes [Child] will have no difficulty reestablishing such relationships in Texas.

Trial Court Opinion, 8/5/2022, at 26-27.

Contrary to Father's assertion, Child did not provide his custody preference. GAL Report, 7/12/2022, at 2. During his *in camera* testimony, Child testified, as follows.

> Q: So I don't want to keep asking. I want to make sure you have your chance. Do you have a preference?
>
> A: Do I have a preference? I'm going to tell you this. [Mother] believes I should let you decide. That's what [Mother] believes. [Father] believes that I should stay with him because, you know, it's what he wants. So both parents have given me their opinion on the matter.

N.T., 7/18/2022, at 30. Additionally, in the supplemental report, the GAL stated that Child wants the court to decide. GAL Report, 7/12/2022, at 2. Even if Child had a preference, "the law is clear that a child's preference is not controlling." Trial Court Opinion, 9/23/2022, at 5, *citing* **E.A.L. v. L.J.W.**, 662 A.2d 1109 (Pa. Super. 1995).

Furthermore, as stated **supra**, the trial court ordered the GAL to obtain Child's medical records after a pre-trial conference in April 2022. The GAL changed her recommendation after it was revealed that Father disregarded medical advice and allowed Child to wrestle risking further injury to his hand, and that Father showed Child the GAL's recommendation and court filings by Mother. **See** GAL Report, 7/12/2022. The record confirms that the GAL was provided new information, and provided a supplemental report that reflected her findings. Accordingly, Father's argument is without merit.

Based on the testimony, and our review of the certified record, we conclude that the court reasonably weighed the Section 5328(a) factors. The trial court's consideration of the best interest of Child was careful and thorough, and we discern no abuse of discretion. Accordingly, we affirm the order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/3/2023